## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| JAY QUIGLEY, | : | |
| Plaintiff, | : | CASE NO. 3:23-cv-1182 (MPS) |
| | : | |
| v. | : | |
| | : | |
| BURROW, et al., | : | |
| Defendants. | : | FEBRUARY 2, 2024 |
| | : | |

---

### INITIAL REVIEW ORDER

Plaintiff Jay Quigley, incarcerated at MacDougall-Walker Correctional Institution in Suffield, Connecticut, filed this case under 42 U.S.C. § 1983 naming three defendants, Officer Burrow, Officer Velez, and Lieutenant Santiago.  The plaintiff alleges that defendants Burrow and Velez used excessive force against him while defendant Santiago stood by and watched. The plaintiff seeks declaratory relief and damages from the defendants in their individual and official capacities.

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. This requirement applies to all prisoner filings regardless whether the prisoner pays the filing fee. *Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 159 (D. Conn. 2005) (citing *Carr v. Dvorin*, 171 F.3d 115 (2d Cir. 1999) (per curiam)). Here, the plaintiff is proceeding *in forma pauperis*.

The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A. Based on this initial review, the Court orders as follows.

## I.    <u>Allegations</u>

While the Court does not set forth all of the facts alleged in the plaintiff's Complaint (ECF No. 1), it summarizes his basic factual allegations here to give context to its ruling. The plaintiff was incarcerated in the Walker building of MacDougall-Walker Correctional Instituiton at all times relevant to this action. *Id*. ¶ 20. He has a documented history of mental illness, including diagnoses of bipolar disorder and post-traumatic stress disorder. *Id*. ¶ 21.

On May 19, 2023, the plaintiff was brought to the recreation yard and placed in a "cage" by himself. *Id*. ¶ 22. Although Officer Burrow was not in charge of the plaintiff's housing unit, B-2, and was acting against the recommendations of the officers in charge of the unit, she ordered that the inmates be separated during recreation. *Id*. ¶¶ 22-25. She also refused to permit the block officer to call a supervisor regarding her order. *Id*. ¶ 24.

At 7:45 p.m., the plaintiff asked to be taken back to his cell. *Id*. ¶ 26. After the plaintiff was handcuffed behind his back, the recreation cage was opened, and Officer Burrow grabbed the plaintiff's arm in an aggressive manner to escort him to his cell. *Id*. ¶ 27. The plaintiff calmly asked Officer Burrow why she spoke to everyone in a hostile manner and asked whether she was "O.K." *Id*. ¶ 28. Officer Burrow responded, "are you f—king serious? I'm not doing this right now." *Id*. ¶ 29.

Officer Burrow began "speed walking," pulling the plaintiff's arm as she did so. *Id*. The plaintiff felt uncomfortable and stopped walking. *Id*. ¶ 30. Officer Burrow tried "ripping" the

2

plaintiff's arm, but he pulled his arm away. *Id*. Officer Wright was present and took the plaintiff's right arm, telling Officer Burrow that he would return the plaintiff to his cell. *Id*. ¶ 31.

Officer Burrow rejected the offer and forcefully pulled on the plaintiff's arm so he turned to look at her. *Id*. ¶ 32. She then screamed, "you want to do this?" *Id*. Officer Burrow pulled hard on the plaintiff's arm, pulling toward the ground, but lost her grip and balance when the plaintiff's arm did not move. *Id*. Other officers then secured the plaintiff against the wall. *Id*.

Officer Matthews called a code summoning all available officers to the B-recreation yard. *Id*. ¶ 33. The plaintiff remained motionless facing the wall and complied with all orders. *Id*. ¶ 34.

Officer Burrow screamed at the plaintiff to get on the ground and tried grabbing the plaintiff's left leg to tackle him, but the leg did not move. *Id*. ¶ 35. Officers Wright and Mann-Cyr then politely asked the plaintiff to lie on the floor. *Id*. ¶ 36. The plaintiff complied with the request. *Id*.

Officer Burrow jumped on the plaintiff's back and screamed to the other officers to "pick him up." *Id*. ¶ 37. Officer Velez punched the plaintiff's head and pulled the plaintiff's body upright. *Id*. Officer Burrow punched the plaintiff in the left eye and then punched him two more times in the face. *Id*. The plaintiff lay back down on the floor and Officer Burrow punched, kneed, and elbowed him in the ribs and back about six times. *Id*. All the officers present looked confused at what was happening with the exception of Officer Velez who "slammed the plaintiff's face off the ground." *Id*. ¶ 38.

Believing the assault was over when Lieutenant Santiago arrived, the plaintiff told Officer Burrow "you have real mental issues." *Id*. ¶ 39. Officer Burrow screamed "I am a crazy

bitch," and continued to assault the plaintiff.  *Id.*  Officer Velez cheered and laughed while Lieutenant Santiago watched.  *Id.* ¶ 40.

Officer Mann-Cyr grabbed and subdued Officer Burrow.  *Id.* ¶ 41.  The plaintiff was taken to unit B-1 and given two disciplinary tickets.  *Id.* ¶ 42.  He was then taken to the medical unit and given an ice pack for his black eye.  *Id.* ¶ 43.

The plaintiff sees a permanent white light whenever he looks to his left and his eye vibrates randomly throughout the day making it impossible to see from his left eye.  *Id.* ¶ 44.

## II.   Discussion

The plaintiff contends that Officers Burrow and Velez used excessive force against him, and that Lieutenant Santiago stood by and permitted the use of force to continue.  Records available on the Department of Correction website show that the plaintiff is a sentenced inmate.[1] *See* www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=304839 (last visited Dec. 4, 2023).  Thus, his claims are cognizable under the Eighth Amendment.  *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (deliberate indifference claims of sentenced inmates are brought under the Eighth Amendment while claims of pretrial detainees are brought under the Fourteenth Amendment).

### A.  Use of Excessive Force

To state a claim for use of excessive force in violation of the Eighth Amendment, the

---

[1]  The court may take judicial notice of matters of public record.  *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *United States v. Rivera*, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of BOP inmate locator information); *Ligon v. Doherty*, 208 F. Supp. 2d 384, 386 (E.D.N.Y. 2002) (taking judicial notice of state prison website inmate locator information).

plaintiff must allege facts establishing subjective and objective components. *See Simms v. Artuz*, 230 F.3d 14, 20-21 (2d Cir. 2000). The objective component focuses on the harm done to the inmate in light of contemporary standards of decency. The amount of harm required depends on the nature of the claim. *Id.* at 21. Although some degree of injury is usually required, the prisoner need not show that he suffered a significant injury to state a claim for use of excessive force. *See Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010) ("[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury.") (quoting *Hudson v. McMillian*, 503 U.S. 1, 4 (1992)). However, "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Id.* at 37 (quoting *Hudson*, 503 U.S. at 9). The subjective component of the excessive force standard requires a showing that the use of force was "carried out 'maliciously and sadistically' rather than as a part of a 'good faith effort to maintain or restore discipline.'" *Id.* at 40 (quoting *Hudson*, 503 U.S. at 9).

The extent of an inmate's injuries is one factor the court may use to determine whether correctional staff could "plausibly" have considered the force necessary in a particular situation. *Hudson*, 503 U.S. at 7. Other factors include "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any effort made to temper the severity of a forceful response." *Id.* (internal quotation marks and citation omitted).

The plaintiff alleges that Officer Burrow instigated the use of force when he asked her a question, first by walking quickly, then by pulling on his arms. The plaintiff concedes that he pulled his arm away from Officer Burrow when she pulled on it very hard. However, all force

could have been averted had Officer Burrow agreed to permit Officer Wright to finish the escort of the plaintiff to his cell.  Instead, Officer Burrow demanded that the plaintiff lie on the floor and, when he did so after being asked to do so by other officers, proceeded to assault him with the assistance of Officer Velez.  The facts alleged do not support a need for use of force and do not suggest that defendants Burrow and Velez made any effort to temper the force used.  Indeed, as a result of the use of force, the plaintiff alleges that he suffered a serious eye injury.  The claim for use of excessive force will proceed against Officers Burrow and Velez.

**B.  Failure to Intervene**

The plaintiff also alleges that Lieutenant Santiago arrived at the scene but did not stop Officer Burrow's continued use of force when the plaintiff made a comment.  To state a claim for a prison official's failure to intervene to stop or temper the use of force, a plaintiff must allege facts showing that: "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) [the officer knew] that the victim's constitutional rights were being violated; and (3) the officer [did] not take reasonable steps to intervene."  *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008), *aff'd sub nom. Jean-Laurent v. Wilkerson*, 461 F. App'x 18 (2d Cir. 2012).  "Liability attaches on the theory that the officer, by failing to intervene, becomes a 'tacit collaborator' in the illegality." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (quoting *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988)).

The plaintiff alleges that Lieutenant Santiago stood by and watched as Officer Burrow continued to assault him.  Based on the facts alleged, it appears that Lieutenant Santiago was aware that the plaintiff's constitutional rights were being violated—he observed Officer Burrow assaulting a restrained and unresisting prisoner.  Although the plaintiff does not indicate how

6

long Lieutenant Santiago stood and watched, he does allege that Officer Mann-Cyr was able to restrain Officer Burrow and stop her assault on the plaintiff while Lieutenant Santiago was present.  Thus, it appears that Lieutenant Santiago had a realistic opportunity to intervene.  The failure to intervene claim will proceed against Lieutenant Santiago.

     **C.  <u>Official Capacity Damages Claims</u>**

The plaintiff names all defendants in their individual and official capacities.  However, he may obtain damages from the defendants only in their individual capacities.  The Eleventh Amendment prohibits an award of damages against state officials in their official capacities unless the state has waived that immunity or Congress has abrogated it.  *Kentucky v. Graham*, 473 U.S. 159, 169 (1995).  Section 1983 does not abrogate state sovereign immunity.  *Quern v. Jordan*, 440 U.S. 332, 343 (1979).  Nor does the plaintiff allege facts suggesting that the state has waived immunity in this case.  Thus, as all defendants are state officials, the plaintiff cannot obtain damages from any defendant in his or her official capacity.  All claims for damages against the defendants in their official capacities are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

     **D. <u>Declaratory Relief</u>**

The plaintiff also includes a request for declaratory relief.  Declaratory relief serves to "settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationship."  *Colabella v. American Inst. of Certified Pub. Accountants*, No. 10-cv-2291(KAM)(ALC), 2011 WL 4532132, at *22 (E.D.N.Y. Sept. 28, 2011) (citation omitted).  As such, "[d]eclaratory relief operates prospectively to enable parties to adjudicate claims before either side suffers great damages."

*Orr v. Waterbury Police Dep't*, No. 3:17-cv-788(VAB), 2018 WL 780218, at *7 (D. Conn. Feb. 8, 2018). In *Orr*, the court dismissed the request for declaratory judgment that the defendants had violated the plaintiff's Fourth Amendment rights during his arrest because the request "concern[ed] past actions." *Id.* As the plaintiff's request for declaratory relief concerns a past incident, any request for declaratory relief would not be cognizable. The request for declaratory relief is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### III.   <u>Conclusion</u>

The Eighth Amendment claims for use of excessive force against Officers Burrow and Velez and failure to intervene against Lieutenant Santiago will proceed against these defendants in their individual capacities only. The request for declaratory relief and the request for damages from the defendants in their official capacities are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b).

The Court enters the following additional orders.

(1)     **The Clerk shall** contact the Department of Correction Office of Legal Affairs to ascertain a current service address for defendants Officer Burrow, Officer Velez, and Lieutenant Santiago, mail a waiver of service of process request packet containing the Complaint and this Order to each defendant at the address provided within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth day after mailing. If any defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on the defendant in his individual capacity and the defendant shall be required to pay the cost of such service.

(2)     **The Clerk shall** send the plaintiff a copy of this Order.

8

(3)     **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4)     The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(5)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(6)     All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(7)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8)     If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. The plaintiff should also notify the defendants or the attorney for the defendants of his new address.

9

(9)     The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

(10)     The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to the plaintiff.

**SO ORDERED** this 2nd day of February 2024 at Hartford, Connecticut.

_____/s/_____
Michael P. Shea
United States District Judge

10